Herbert, J.
I concur in the opinions of O’Neill, J., in cases Nos. 37110, 37111, 37112, 37276, 37277, 37473 and 37280. I appreciate the thorough study that each member of this court has given to the important and difficult questions raised in these cases.
The complicated, speculative and even disturbing extent to which the hypothetical utility company concept may lead is illustrated in Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission (decided February 25, 1957), 232 La., 446, where in the opinion, at page 462, the following appears:
“Plaintiff contends that in computing its earnings requirement, the commission increased actual earnings by $596,000 — a theoretical amount by which income taxes would be reduced — -with a 45% hypothetical debt ratio; that this fictitious increase in income and downward adjustment in income taxes is based upon the claim that the telephone company should be considered as having a long term debt in its capital structure (which it does not have), and as having paid interest upon that long term debt (which it has not paid).
“Plaintiff further argues that the commission invaded the reasonable range of discretion of its board of directors. Its officials testified, in substance, that the present debt ratio of approximately 22% is the result of prudent and sound policies.”
The court affirmed the order of the commission.
In addition to the speculative forecasting requisite to this method of rate making there is the further possibility that this ‘ ‘ concept ’ ’ may lead to state control and management of public j utilities as is hinted in the Southern Bell case, supra.
Cincinnati Gas & Electric Co. v. Public Utilities Commission, 173 Ohio St., 473 (decided July 5, 1962), indicates a turning point in the thinking of this court relative to theorizing in the areas of rate making. At the foot of page 473 and top of page 474, the court in a per curiam opinion said:
*583 “The company contends that for its future federal income tax liability it should be permitted to ‘normalize’ these taxes for rate-maldng purposes. This would involve having the commission allow for federal income tax expense not only the tax actually paid, but an additional amount of $141,827, equal to the difference between the actual tax and the tax that would have been paid if the company had claimed no more than so-called straight-line depreciation as a deduction from income for federal tax purposes. In other words, the company is contending that the allowance for federal income tax expense should be computed as if straight-line depreciation rather than so-called declining balance depreciation were used.” (Emphasis added.)
Further, on page 474, the court quoted with approval the following conclusion of the Public Utilities Commission:
“* * * we must reject the theory that a deferral of tax liability arises from the use of accelerated depreciation, and consequently must reject normalisation of taxes for rate-mahing purposes; no such deferral exists and no such liability will arise. We will allow only the expense incurred, that is, the federal income tax actually paid by the company. It is our opinion that this treatment will' benefit both the rate-payers and the utility. ’ ’ (Emphasis added.)
It should be noted that that conclusion of the commission was affirmed by a unanimous court, O’Neill, J., dissenting upon another ground, and Thomas Herbert, J., not participating. This is a wholesome doctrine. Neither the ratepayer nor the utility has cause to complain. This doctrine of “actuality” should be encouraged so far as realities permit. We recognize that under any method or formula for rate making there must be indulged some forecast and speculation as to the future.
O’Neill, J., speaking for the majority, and Taft, C. J., for the minority, have ably presented and discussed various phases of the problems incident to rate making.
Griffith, J., concurs in the foregoing concurring opinion.